UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW JACKSON and TRICIA MEAD-JACKSON, ) ) ) | |
| Plaintiffs, ) ) ) Docket no. 1:15-cv-00114-GZS | |
| v. ) ) | |
| SUNSET LADDER CO., INC., ABSS MANUFACTURING CO., INC., CUSTOM TOOL SUPPLY, LLC and BATAVIA SERVICES, INC., ) ) ) ) ) | |
| Defendants. ) | |

**ORDER ON MOTIONS TO DISMISS**

Before the Court are the Motions to Dismiss for Lack of Personal Jurisdiction Pursuant to F.R. Civ. P. 12(b)(2) filed by Defendant ABSS Manufacturing Co., Inc. ("ABSS") (ECF No. 14) (the "ABSS Motion to Dismiss") and by Defendant Custom Tool Supply, LLC ("Custom Tool") (ECF No. 36) (the "Custom Tool Motion to Dismiss"). For the reasons explained herein, the Court GRANTS the ABSS Motion to Dismiss (ECF No. 14) and DENIES the Custom Tool Motion to Dismiss (ECF No. 36).

### I.   LEGAL STANDARD

The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996). Thus, to establish personal jurisdiction over a defendant, the plaintiff must demonstrate both that the forum state's long-arm statute grants jurisdiction and that exercise of jurisdiction under the

statute is consistent with the Due Process Clause of the United States Constitution. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002). Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the due process inquiry controls in the present case. See 14 M.R.S.A. § 704–A; Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995).

There are two means of establishing personal jurisdiction over a defendant. General personal jurisdiction is established upon a finding that a defendant has maintained "continuous and systematic contacts with a particular state," in which case personal jurisdiction exists as to "all matters, even those unrelated to the forum contacts." Reed & Reed, Inc. v. George R. Cairns & Sons, Inc., 519 F. Supp. 2d 148, 153 (D. Me. 2007) (citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). Absent general personal jurisdiction, the Court must assess its jurisdiction over a defendant in the context of the specific case and by examining a defendant's case-related contacts with the forum.

The First Circuit has instructed courts faced with a challenge to specific personal jurisdiction to consider three factors:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (citations omitted).[1] "An affirmative finding on each of the three elements of the test is required to support a finding of specific

---

[1] The "Gestalt factors" include: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Sawtelle, 70 F.3d at 1394.

jurisdiction." Phillips Exeter Acad., 196 F.3d at 288.  Nonetheless, "a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: the gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." Sawtelle, 70 F.3d at 1394 (citations omitted).

Ultimately, it is Plaintiffs' burden to prove that personal jurisdiction exists in a given forum.  Id. at 1387.  Under the commonly employed prima facie standard, the Court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar–Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992).  In making this showing, "[p]laintiffs may not rely on unsupported allegations in their pleadings, but are obliged to adduce evidence of specific facts." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (internal citations and quotations omitted).  The Court accepts sufficiently supported facts as true and views them in the light most favorable to Plaintiffs.  Daynard, 290 F.3d at 51.  The Court must also accept as true any uncontested facts put forward by a defendant.  Id.  In accordance with this standard, the Court sketches the relevant factual background below.

## II. BACKGROUND

ABSS is incorporated and headquartered in Arizona and is in the business of manufacturing ladders.  (Aff. of Nasir Ahmed (ECF No. 14-2) at PageID # 133.)  ABSS does not directly sell ladders to end users, but rather sells ladders to retailers.  (Pls. Ex. C (ECF No. 52-3) at PageID # 345.)  Custom Tool is one of the retail sellers that markets ABSS ladders.  (Aff. of Nasir Ahmed (ECF No. 52-6) at PageID # 352-53.)  ABSS also sells ladders to Sunset Ladder Co., Inc., a California corporation ("Sunset").  (Id.)  Sunset is wholly-owned by Bradly Becnel, who owns a

3

fifty percent interest in ABSS.  (Aff. of Bradly Becnel (ECF No. 56-1) at PageID # 385 & Aff. of Nasir Ahmed (ECF No. 56-2) at PageID # 388.)  Mr. Becnel is an officer of both Sunset and ABSS.[2]

Sunset's website describes ABSS as an "affiliated company" and lists an ABSS facility in Arizona as the "Arizona Office/Warehouse" of Sunset.  (Pls. Exs. D & E (ECF Nos. 52-4 & 52-5) at PageID # 348-350.)  ABSS has registered "Sunset Ladder Co." as a "doing business as" entity name in the State of Arizona.  (Pls. Ex. A (ECF No. 52-1) at PageID # 337.)  Sunset has shipped products costing a total of $2,533.34 to addresses in Maine since 2009.  (Pls. Ex. C (ECF No. 52-3) at PageID # 339.)

Custom Tool is a Colorado company with its principal place of business in Colorado.  (Aff. of Andrew Helbig (ECF No. 36-2) at PageID # 282.)  Custom Tool sells various products, including tools, tool-related products, safety products, and ladders.  (Aff. of Andrew Helbig (ECF No. 55-1) at PageID # 373-374.)  Plaintiffs have provided records of 394 product sales made by Custom Tool that were shipped to addresses in Maine between 2009 and 2012.[3]  (Pls. Exs. B & C (ECF Nos. 51-2 and 51-3) at PageID # 310-327.)  These transactions were invoiced for a cumulative total of $91,134.  (Id.)

A forty-foot extension ladder designed and manufactured by ABSS was sold by Custom Tool to Multiband Corporation ("Multiband").  (Pls. Ex. A (ECF No. 51-1) at PageID # 309.)  This

---

[2] Plaintiffs assert that the interrogatory responses of ABSS and Sunset establish that Mr. Becnel is an officer of both companies.  (Pls. Ex. B & C (ECF Nos. 52-2 & 52-3) at PageID # 341, 346.)  While the interrogatory responses of ABSS are not clear as to Mr. Becnel's precise position and title at ABSS, the Court assumes, for the purposes of this Order, that Plaintiffs have made a prima facie showing that Mr. Becnel is an officer of ABSS.

[3] Custom Tool asserts that "many" of these transactions were between Custom Tool and non-residents of Maine. (Custom Tool's Reply to Opp'n to Def. Custom Tool's Mot. to Dismiss (ECF No. 55) at PageID # 367.)  It is not apparent from the record which purchasers are non-residents of Maine except, perhaps, Multiband.  (Id. at PageID # 373.)  In any case, Custom Tool does not dispute that at least some purchasers were Maine residents, nor does it dispute that these transactions involved shipments to addresses in Maine.

ladder (the "Ladder") was invoiced to a Multiband address in Minnesota and shipped by Custom Tool to an address in New Hampshire specified by Multiband. (Id.) Mr. Jackson, an employee of Multiband, alleges that in 2014, he was performing work on a satellite dish in Wilton, Maine and used the Ladder to access the roof of a customer's residence. (Pls.' First Am. Compl. (ECF No. 28) at PageID # 212-213.) Mr. Jackson alleges that he fell from the Ladder and sustained injuries. (Id.) He and his wife brought suit in Franklin County Superior Court against Sunset, ABSS, and Batavia Services, Inc. ABSS removed the case to this Court on March 25, 2015. (Notice of Removal (ECF No. 1).) Plaintiffs subsequently filed their First Amended Complaint (the "Complaint"), which named Custom Tool as an additional defendant. On October 28, 2015, the parties stipulated that all claims against Sunset be dismissed without prejudice. (Stipulation of Dismissal (ECF No. 53) at PageID # 355.)

### III. DISCUSSION

A plaintiff can establish that a court has personal jurisdiction over a defendant by demonstrating that the court has either general or specific personal jurisdiction. Plaintiffs concede that this Court cannot exercise general personal jurisdiction over either ABSS or Custom Tool. This analysis therefore proceeds by evaluating, first, whether this Court has specific personal jurisdiction over ABSS and, second, whether this Court has specific personal jurisdiction over Custom Tool. Applying the three-factor test set forth by the First Circuit, the Court considers, for each Defendant, whether its forum state activities related to Plaintiffs' claims and whether it purposefully availed itself of the privilege of doing business in the forum state. If the relatedness and purposeful availment prongs are satisfied for a particular Defendant, the Court next considers

the "Gestalt factors" to make a final determination of whether exercising personal jurisdiction over such Defendant is reasonable.

   1. **ABSS**

       a. Relatedness

The "relatedness" prong of the specific personal jurisdiction test is satisfied where the claim underlying the litigation arises out of or relates to the defendant's forum state activities. United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088-1089 (1st Cir. 1992). Courts applying this prong determine whether there is a "material connection" between a defendant's conduct and the injury allegedly suffered by the plaintiff. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). The First Circuit describes this prong as a "flexible, relaxed standard" that is informed by the foreseeability of the alleged harm to the plaintiff. Nowak, 94 F.3d at 715 (citation omitted).

ABSS argues that its conduct is not related to Plaintiffs' cause of action, because ABSS merely placed the Ladder in the stream of commerce. According to ABSS, Plaintiffs have not demonstrated that ABSS has engaged in any in-forum activities that relate to Plaintiffs' claims. (ABSS Mot. to Dismiss (ECF No. 14) at PageID # 114.)

Contrary to ABSS's arguments, placing a product into the stream of commerce creates a material connection with claims based on the use of the product. See Amburgey v. Atomic Ski USA, Inc., 2007 WL 1464380, *2 (D. Me. 2007); see also J. McIntyre Mach., Ltd. V. Nicastro, 131 S.Ct. 2780, 2787-2788 (2011) (explaining that defendant's objection to jurisdiction on a "stream of commerce" theory is considered in connection with purposeful availment determination). ABSS's design and manufacture of the Ladder "form an important . . . element of proof in [Plaintiffs'] case." 163 Pleasant Street Corp., 960 F.2d at 1089 (internal quotation

6

omitted). Further, it was foreseeable that the Ladder, once placed into a nationwide distribution network, could be used, and might cause injury, in a state far from the place of manufacture.

ABSS is not correct in its argument that its acts of manufacturing the Ladder and selling it to a retailer are too attenuated from Mr. Jackson's use of the Ladder to satisfy the relatedness prong. As noted in Unicomp, Inc. v. Harcros Pigments, Inc., "[N]either the Supreme Court nor the Court of Appeals for the First Circuit has expressed concern about the causal link in cases analyzing the stream-of-commerce theory of personal jurisdiction. Rather, in these cases, the jurisdictional hitch comes from the requirement of purposeful availment." 994 F. Supp. 24, 26 (D. Me. 1998) (internal citations omitted); see also Phillips v. Prairie Eye Center, 530 F.3d 22, 28-29 (1st Cir. 2008) (explaining that indirectness of contacts between defendant and forum state is relevant to purposeful availment analysis).

This principle remains central to the relatedness analysis. See Tom's of Maine v. Acme-Hardesty Co., 565 F. Supp. 2d 171, 177 (D. Me. 2008) (manufacturer's production and sale of product to a distributor in Malaysia was related to product owner's eventual injury in Maine); Amburgey, 2007 WL 1464380 at *2 ("[Defendant] manufactured the product that reached the forum state and is the alleged cause of the injury, which is sufficiently foreseeable to satisfy the relatedness prong of the [specific personal jurisdiction] inquiry").

Here as well, ABSS's activities in manufacturing the Ladder and selling it to Custom Tool are related to Plaintiffs' claims. The critical question is whether ABSS has purposefully availed itself of the privilege of conducting business in the State of Maine.

    b. Purposeful Availment

The First Circuit describes the touchstone of purposeful availment as "purposeful activity [by defendant] related to the forum that would make the exercise of jurisdiction fair, just, or

reasonable," rather than "defendant's random, isolated, or fortuitous contacts with the forum state." Sawtelle, 70 F.3d at 1391 (internal citations and quotations omitted). This purposeful activity must be voluntary and directed to the forum. See Boit, 967 F.2d at 683 ("'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment.'") The activity must not be "based on the unilateral actions of another party or a third person," and "must be such that [defendant] should reasonably anticipate being haled into court [in the forum state]." Nowak, 94 F.3d at 716 (internal citations omitted).

Plaintiff has not been able to identify any voluntary contacts between ABSS and Maine. However, Plaintiff argues that the activities of Sunset, including Sunset's shipment of products to addresses in Maine, should be deemed to be activities of ABSS for the purpose of determining ABSS's contacts with Maine. In other words, Plaintiff urges this Court to pierce the corporate veil between Sunset and ABSS.

Maine law allows for piercing the corporate veil between a business entity and its related entity or person where the opposing party establishes that such business entity "abused the privilege of a separate corporate identity" and "an unjust or inequitable result would occur if the court recognized the separate corporate existence." State v. Weinschenk, 868 A.2d 200, 207 (Me. 2005). Maine courts do not strictly require proof of fraud. See Advanced Const. Corp. v. Pilecki, 901 A.2d 189, 195 (Me. 2006). However, courts applying Maine law have recognized that a high bar must be reached in order to pierce the corporate veil. These courts have identified characteristics of corporate practice that, individually or in combination, may be deemed sufficient to demonstrate both abuse and inequity. See Pilecki, 901 A.2d at 195 (finding that deceptive trade practices constituted abuse of the corporate form, but that no inequity would result from recognizing separate corporate existence in the absence of undercapitalization, insolvency, or

bankruptcy); Weinschenk, 868 A.2d at 207 (finding veil-piercing proper where entity's principal made personal misrepresentations to customers, principal had pervasive control over the entity, entity was thinly capitalized and insolvent, and failing to hold principal liable would lead to an inequitable result for injured parties); Town of Lebanon v. East Lebanon Auto Sales LLC, 25 A.3d 950, 953 (Me. 2011) (finding that sole member of several limited liability companies did not bear personal liability even though she fully controlled the companies and kept them closely inter-connected, because no evidence suggested that sole member had abused the privilege of forming the entities or that recognizing the separate entities would lead to an inequitable result); Tom's of Maine, 565 F. Supp. 2d at 182 (finding veil-piercing proper where entities were under fully common ownership, entities failed to attempt to delineate separate corporate identities, and inequity would result from recognizing entities as separate).

Plaintiff has identified the following facts relevant to this analysis: ABSS and Sunset share a fifty percent common ownership, ABSS has registered a "doing business as" entity name in Arizona that is nearly identical to Sunset's name, ABSS and Sunset have one officer in common (Mr. Becnel), and Sunset's website describes ABSS as an "affiliated company" and lists an ABSS facility in Arizona as the "Arizona Office/Warehouse" of Sunset.

These facts are indicative of the affiliate relationship between ABSS and Sunset. However, corporate affiliation alone does not establish abuse of the corporate form, nor does it indicate that inequitable results would flow from this Court's recognition of ABSS's separate corporate existence. ABSS and Sunset maintain separate business premises and keep independent financial books and records. While the two companies have similar entity names, Plaintiffs have not presented evidence that ABSS and Sunset hold themselves out to the public as one and the same enterprise. The information from the Sunset website that Plaintiffs cite in support of piercing the

9

corporate veil suggests that ABSS and Sunset work together cooperatively. However, the same information differentiates between the identities of the two companies and describes their separate business models. Finally, no evidence suggests that ABSS and Sunset are jointly operated in order to facilitate undercapitalization or insolvency, or to shield either entity from contractual or legal obligations.

The facts adduced by Plaintiff are simply not sufficient for this Court to pierce the corporate veil. Consequently, this Court will not impute Sunset's business activities to ABSS. Based on the record, there is no basis to conclude that ABSS has purposefully engaged in activities or contacts that avail itself of the privilege of conducting business in Maine. In the absence of purposeful availment, this Court cannot exercise specific personal jurisdiction over ABSS in this case.

### 2. Custom Tool

#### a. Relatedness

As discussed above in connection with Defendant ABSS, placing a product in the stream of commerce is related to the eventual use of the product in the forum state that results in injury. See, e.g., Unicomp, 994 F. Supp. at 26; Tom's of Maine, 565 F. Supp. 2d at 182. Custom Tool is one step closer to Mr. Jackson's use of the Ladder than ABSS, as Custom Tool sold the Ladder to Mr. Jackson's employer and shipped the Ladder to New Hampshire, from whence it was transported to Maine. Just as with ABSS, Custom Tool engaged in activities that are related to Plaintiffs' cause of action, because there was a material connection between Custom Tool's commercial activities and Plaintiffs' claims, and it was foreseeable that the Ladder would be used in Maine and could cause injury there.

b.  Purposeful Availment

Plaintiffs argue that because Custom Tool regularly ships products to the State of Maine, it has sufficient contacts with Maine to meet the "purposeful availment" prong of the specific personal jurisdiction test. Custom Tool counters that it did not ship the Ladder to Maine, it has rarely shipped any ladders to Maine, and that the products it ships to Maine represent only a small portion of the overall sales revenues of Custom Tool, approximately .0013 percent. (Aff. of Andrew Helbig (ECF No. 36-2) at PageID # 282.)

Custom Tool misunderstands the essence of the purposeful availment determination. First, the significance of the fact that Custom Tool shipped the Ladder to New Hampshire is addressed through the relatedness analysis. As explained above, the relatedness prong does not require that a defendant have shipped the relevant product to the forum state directly. Furthermore, the shipping address for a single product is not integral to the purposeful availment analysis, because this analysis is concerned with all of the defendant's voluntary contacts with the forum state. See Harlow, 432 F.3d at 63-64 (finding lack of purposeful availment after evaluating all possible contacts between defendant and forum state).

Custom Tool's other assertions bear on the totality of its contacts with Maine. These are important considerations, but they are not determinative. It is not essential that Custom Tool have shipped a certain quantum of like products to the forum state. See Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 892 (D. Me. 1992) (finding purposeful availment where defendant shipped a single order of lumber to a destination in Maine). It is also not a prerequisite that Custom Tool derive any particular share of its revenue from sales shipped to the forum state or sold to forum state residents. See Auburn Manufacturing, Inc. v. Steiner Indust., 493 F. Supp. 2d 123, 130 (D.

Me. 2007) (finding purposeful availment where defendant's shipments to Maine represented small percentage of defendant's revenue).

Rather than relying on a specific numerical sales or revenue threshold, this Court makes the purposeful availment determination by considering the nature and character of Custom Tool's contacts with Maine as a whole. The purposeful availment prong is satisfied if those contacts were voluntary, were not random, isolated or fortuitous, and were such that Custom Tool should have reasonably anticipated the possibility of being haled into court in Maine. While Plaintiffs concede that Custom Tool is not registered to do business in Maine and does not maintain a physical presence in the state, they have submitted evidence of repeated product sales shipped by Custom Tool to addresses in Maine, including 394 separate transactions in the four-year period extending from 2009 (the year that Custom Tool sold the Ladder to Multiband) to 2012 (the year that Mr. Jackson was allegedly injured while using the Ladder).

Custom Tool's sustained, repeated transactions of business with parties directing shipment to Maine demonstrate purposeful availment. Plaintiffs' evidence indicates that Custom Tool has, at least since 2009, engaged in transactions involving shipments to Maine of products costing, in the aggregate, approximately $15,000-$20,000 per year. This pattern is similar to the sales and shipping contacts in prior cases where defendants have been found to have purposefully availed themselves of the privilege of doing business in Maine based upon product shipments directed into the State of Maine. See Unicomp, 994 F. Supp. 24 at 28 (finding purposeful availment where defendant directed seventeen product shipments to Maine over a five-year period); Auburn Manufacturing, 493 F. Supp. 2d at 130 (finding purposeful availment where defendant distributed catalogs in Maine and shipped products to Maine generating less than one percent of defendant's

12

revenue); Judith Gap Lumber Co., 808 F. Supp. at 892 (finding purposeful availment where defendant accepted an order to ship lumber to Maine and made delivery).

Custom Tool's contacts with Maine were not random, isolated, or fortuitous, but rather were transactions entered into by Custom Tool voluntarily and directly. As a seller that frequently shipped products into Maine, Custom Tool should have reasonably anticipated the possibility that it would be subject to the jurisdiction of courts in Maine for a cause of action arising from its sale and shipment of products. By repeatedly contracting to sell and ship products to addresses in Maine, Custom Tool purposefully availed itself of the privilege of conducting business in Maine and derived the benefits and protections that Maine law afforded to it.

### c. Gestalt Factors

Plaintiffs have satisfied both the relatedness and purposeful availment prongs of the specific personal jurisdiction test. The final inquiry is whether it is reasonable for this Court to exercise jurisdiction, in light of the Gestalt factors. Custom Tool has made no argument regarding the Gestalt factors, asserting only that "because neither of the first two prongs of the analysis has been satisfied, the need to reach the issue of reasonableness has been eliminated." (Custom Tool Mot. to Dismiss (ECF No. 36) at PageID # 260.)

Upon examination, the Gestalt factors support the finding of specific personal jurisdiction. As the First Circuit has noted, travel throughout the United States "creates no especially ponderous burden for business travelers." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). At the same time, the State of Maine has an interest, specifically and in general as a state sovereign, in serving as the forum for adjudication of disputes arising from alleged injuries occurring in Maine. The exercise of jurisdiction over Custom Tool is also consistent with Plaintiffs' interest in obtaining effective relief and would serve to facilitate an efficient and effective adjudication of the dispute. The

Gestalt factors, taken together, indicate that it is reasonable for this Court to exercise specific personal jurisdiction over Custom Tool in this case.

## IV. CONCLUSION

For the reasons just stated, the ABSS Motion to Dismiss (ECF No. 14) is GRANTED and the Custom Tool Motion to Dismiss (ECF No. 36) is DENIED.

SO ORDERED.

        /s/ George Z. Singal  
        United States District Judge

Dated this 23rd day of November, 2015.